This is 22-2711 Middling v. Stiegler. Mr. Babbin, you have three minutes for rebuttal, you may proceed when you're ready. Thank you, your honors. May it please the court, Jeffrey Babbin for the defendant, Mr. Stiegler. The jury here only heard part of the story, yet it rejected the heart of the plaintiff's case, particularly the assault and battery and recklessness counts, a key part of the plaintiff's story that even the plaintiff's expert had relied on. But two rulings of the district court devastated my client's effort to get a fair trial and just verdict to get the whole story heard, which could very well have further affected the jury's understanding of the plaintiff's case. And all of this was because the court wouldn't shift an expert disclosure by a few months, years from trial, and wouldn't allow discovery of a mound of evidence showing an entirely new course of treatment and a different diagnosis that had even been alleged by the plaintiff as having been caused by my client. This should not have been controversial. Pages 31 to 38 of the appendix shows that there had been an agreement, blessed by court order, of a sequence where my client would be able to disclose a defense expert on causation and damages after the plaintiff's expert had been deposed, which had been put off by agreement of the parties to accommodate scheduling issues, and the motion for extension of time was filed literally nine days after the plaintiff's expert deposition. Counsel, look, do you deny that given what the jury found, your client was responsible for some of the harm that came to the plaintiff? And if that is so, given Connecticut's overwhelmingly strong, you take your plaintiff as you find her, does it matter whether you were able or not to show that there were any number of conditions which might have been able to prove that made the effect of what you did much worse? I'm not talking about whether the jury might psychologically look in, but as a matter of law in Connecticut, once you admit, as your client admitted, that if he was found guilty, significant harm would follow, then doesn't everything else not matter? There certainly is sort of an eggshell plaintiff type of law, but that has not been their claim here, Your Honor. Their claim was that there was PTSD caused by my client's conduct. And we were left without an expert to review that theory, which led to actually a motion in limine that said we cannot offer alternative causes. For example, this plaintiff underwent difficult times from her parents' divorce, and we were precluded from properly showing when a motion in limine was granted because of the lack of expert to be able to offer an explanation to the jury of what was causing this plaintiff's symptoms. And I will just add that if we look at what the district court said in response to our motion, page 412 of the appendix, because this was an oral ruling and a transcript, the court said they would grant this motion and allow this. If you apply this court's four-factor test under Patterson for precluding an expert, would allow it and recognize that there was great harm to the defendant, that there was no trial date, that there was no bad faith, but the court said that the plaintiff was prejudiced. The court said the plaintiff was severely prejudiced, but, Your Honors, there were no settled expectations here. None whatsoever. The plaintiff had already been subjected to interviews by the plaintiff's expert three times, had been deposed. It was always expected. Now, the motion in limine, ironically enough, was granted at a time when we didn't even know that there were new treatments and a new treater, Dr. Marr, M-A-H-E-R, who opined that the symptoms of PTSD had resolved and that her problem was solely OCD, obsessive compulsive disorder, and we didn't even know that at the time because of the late disclosure, which led to a hospitalization. Now, this was a completely different constellation of damages. It's not like new back pain from a car accident. And this was not only part of the damages, but her entire testimony and her boyfriend's testimony at trial were difficulties in adult relations. And as it turns out that in 2021, that through Dr. Marr, which we were not able to depose or depose the hospital treaters when she was literally hospitalized for exposure therapy, that this was causing her difficulties. And her plaintiff's expert said on page 761 of the appendix she would have PTSD, which Dr. Marr says has been resolved, for the rest of her life. And Mr. Ponvers, the plaintiff's counsel's closing, page 1031 of our appendix, says that the PTSD is lifelong. So this was at the heart of the plaintiff's case that resulted in $6.8 million in damages, and we were not able to depose the treater. He was outside of the subpoena standard. The court indicated that the evidence of OCD was available from the beginning of discovery. There were two stray references to OCD, one in quotes by an early treater, years earlier, but it was never treated for it, and it was not the basis of the plaintiff's expert's diagnosis. But I have to point out that the difficulty here, if we look at, if I may continue, I see I'm eating into my time, but Dr. Ford, the plaintiff's expert, said at page 859 of the appendix, when asked, well, are you aware that there may have been this OCD treatment, we were limited in how much we could cross-examine at this point, because we had not been able to put the records into evidence, because we didn't have a foundation, we couldn't get this, take the deposition of the distant expert, of the distant treater, I should say, Dr. Marr. Dr. Ford said no one knows how Dr. Marr came to this conclusion of OCD, and we were hamstrung by that. Counsel, you have three minutes for rebuttal. You can use that now, or you can save it. I will reserve the remainder of my time. Thank you. All right. Good afternoon. May it please the Court. My name is Antonio Pomvera. I represent Natasha Mindling. I also represented her at trial. I'd like to address a couple of the points that were just made by Attorney Babin. But first, I would like to make the point this case does not, this appeal does not concern whether George Stigler is a child molester. The issues that have been brought up on appeal have to do with damages and evidence that the defendant claims it was prohibited from introducing at trial. But the defendant himself has admitted some of the things that the jury found that he did. No part of the plaintiff's case was rejected by the jury here. I think what Attorney Babin is referring to is that the jury came back for the defendant on the assault and battery claim, and there's some speculation in the defendant's brief here, that the jury rejected any notion that George Stigler touched Natasha when she was between the ages of four and 11 years old. Appellant's brief at page 41 enumerates some of the defendant's admissions at trial, including that he did touch her. On one occasion in a dark room, Natasha touched his penis through his clothes. He admittedly slept in bed with her at least three times. He said there are a lot more graphic things that he did with Natasha. And then also the defense expert, Dr. Ellen Shander, admitted on the stand that Natasha's mother told her that she and George Stigler slept in bed frequently. So there's no dispute that George Stigler touched Natasha Minley. That's admitted by the defendant himself. And so what the jury did with the assault and battery claim we can only speculate about, but it doesn't provide evidence that any part of the plaintiff's case was rejected. Judge Calabresi, your point about the eggshell plaintiff rule is a very good one. You take the plaintiff as you find her. Whether she has OCD, whether that OCD is related to the trauma inflicted by the defendant in the case or it results from something else, or whether they exacerbate each other, the PTSD and the OCD, even if the defense's argument that the OCD is unrelated to any of the sexual trauma inflicted on this child, under the eggshell plaintiff rule that doesn't matter, but also under the substantial factor rule on causation in Connecticut, all we had to prove, all the plaintiff had to prove to get a verdict for her on any of the counts and an award of damages is that the defendant's sexual abuse was a substantial factor in causing her injuries, not the only factor, not even the most substantial factor, but just a substantial factor, and that instruction was not objected to by the defense. It's quoted in the appellee's brief. And so I don't think there's any dispute here. I don't think the argument's even being made by the appellant that George Siegler's sexual abuse didn't cause some harm to Natasha. Of course it did. That's a common sense proposition. And the argument that no, COVID or these other alleged causes are the only factor causing injuries in the case is just not borne out by the evidence. I do want to remind the court it's an abuse of discretion standard here. It's in order for the appellant to succeed and get a new trial, that he has to show that there was manifest error, that Judge Thompson abused his broad discretion in making these pretrial discovery rulings, and I don't think any of the arguments raised on appeal by the appellant rise to a level of manifest clear error and abuse of the district court's broad discretion. There was evidence in the record prior to the running of any deadlines in the scheduling order that Natasha Middling suffered from obsessive-compulsive disorder. Those notes were disclosed well prior to discovery deadlines running. There were Dr. Califano's notes, which was Natasha's primary treater, a psychiatrist, and she determined and recorded, and these notes were produced to the defendant, that Natasha suffered OCD and PTSD and anxiety and a number of other things caused by George Siegler's sexual abuse. So there's no argument that the defense wasn't on notice of these various consequences and traumas inflicted by the defendant. What it chose to do, rather than pursue them, was to let these discovery deadlines run, to let the IME deadline run, to let the deadline for the disclosure of an expert run, and more than that, it actually sent a notice of deposition to Dr. Califano early on in the case, again prior to the running of the deadlines for discovery, and it then chose not to depose her. It withdrew the subpoena. And so, you know, the defendant made a well-informed decision with records in hand to not depose the primary treater of Natasha Middling, who was treating her for the sexual abuse inflicted by their client. It simply cannot be credited that given that history, those strategic choices, that the defendant was somehow prejudiced to the level of manifest injustice by the fact that other documents were disclosed later. Dr. Marr is another example of the defendant not pursuing what it now claims it was prevented from pursuing. So we have the judge's orders on discovery depositions and disclosure of experts in the IME. Following those, and this is in the record in the appendix, the defendant filed a supplemental joint trial memorandum. This is following the rulings on Dr. Marr's records and on the Rogers behavioral health records. The defendant filed a supplemental joint trial memorandum saying, we are going to put Dr. Marr on the stand. He will testify at trial. He's within 100 miles of the courthouse. I believe there was another motion, another document that said, we'll take trial testimony by videotape and put that on. And the supplemental joint trial memorandum of the defense said, we're going to put Dr. Marr's records into evidence. He failed to do either of those things. He did not end up calling Dr. Marr, and he did not put in Dr. Marr's records, and he did not put in the Rogers behavioral health records. These are the records that form the centerpiece of the defendant's appeal and claim of prejudice here. He says, the judge prevented us from pursuing the testimony of these doctors, from making the point that it was OCD not caused by the sexual abuse that is at the root of all of the plaintiff's injuries, and therefore we need a new trial. But he had an opportunity to put on that exact testimony, to put in those exact records, and chose not to do it. That, I think, is evidence of a very intentional choice. It belies a claim now of manifest error. I think it shows that whatever error was perpetrated, which none was, it was harmless. Without, if the honors have questions, I can happily answer them. If not, I'll rest on my boots. Thank you, counsel. Thank you. Mr. Babbin, you have three minutes. Thank you, your honors. When the motion to reopen discovery was denied, there was no trial pending. And we could have taken all these depositions. So trial courts can't set schedules that get followed if there isn't a trial date? Well, there's no schedule. We're talking about now the reopening of discovery. There was no trial. And we had received 80% of all medical records in this case just a month or two before we filed that motion. Let me add, Dr. Marr, out of abundance of precaution, was enlisted. But he was more than 100 miles from the Hartford courthouse. We were not allowed to depose anyone for discovery or trial testimony. We had no foundation to put any records in whatsoever because of the inability to reopen discovery and then potentially even have an expert, although at least we should have been able to have discovery. People normally have to be put on under our federal rules without discovery or deposition. But he was outside subpoena power, and same to the California hospital treaters as well. I will add that there was no physical contact found by this jury. They rejected assault and battery. And at no time did my client admit to any touching. The evidence from Dr. Shander, a previous treater that was mentioned, was that in fact the plaintiff had admitted to her in therapy that there had been no touching. And certainly, we're talking about a young elementary school child, did sleep sometimes in bed with a stepfather, but also the testimony that she sometimes slept in bed with her father, who she spent 50% of her time with after the divorce. Dr. Marr said that PTSD was resolved, that the issues around any conduct of my client was no longer a problem, and her problems were simply from OCDs. This is not an eggshell plaintiff. No causation was ever alleged, that OCD. My client, the jury rejected a substantial amount of the plaintiff's case. We were entitled, they were asking for 60 more years of damages based on PTSD. And we were entitled, therefore, to a trial that would allow my client to be able to properly cross-examine on alternative causes, whether it's OCD, other problems with her father and mother, which we were not allowed to. And the Taylor case from the U.S. Supreme Court says, unless you can find a good reason to preclude the ability to have an expert, that you need to have all the facts come out in order to have a fair trial. Therefore, we ask the court to reverse, send back, to allow for discovery, and then a new trial. Thank you. Thank you, counsel. The matter is submitted, and we reserve decision.